## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 11 2018, 9:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michelle F. Kraus
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lawrence J. Hill, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 11, 2018 <br><br> Court of Appeals Case No. <br> 02A04-1707-CR-1690 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John F. Surbeck, Judge <br><br> Trial Court Cause No. <br> 02D04-1608-F3-50 |

**Baker, Judge.**

[1] Lawrence Hill appeals his convictions for Level 3 Felony Robbery[1] and Level 3 Felony Attempted Robbery,[2] arguing that the evidence is insufficient to support his convictions. Finding the evidence sufficient, we affirm.

## Facts

[2] Around 10:30 p.m. on August 23, 2016, Gabriella Chandler was cleaning the lobby of the McDonald's where she worked in Fort Wayne when Hill entered the restaurant. Gabriella knew Hill because he had previously worked there, and he still visited to socialize after he started working at the Burger King across the street. Hill was wearing his Burger King uniform when he entered, which consisted of a black shirt with a Burger King logo, black pants, and a Burger King hat. Gabriella greeted Hill and spoke with him briefly. Hill then went to the restroom and Gabriella resumed cleaning the lobby. Shortly thereafter, Hill exited the bathroom, stopped in the lobby, looked around, and then left the restaurant through the side entrance.

[3] About twenty-five minutes later, just before the McDonald's would close for the evening, a masked gunman, later identified as Hill, entered through the side entrance, walked around the front counter, and grabbed Gabriella by the back of her neck. Hill was wearing a white long-sleeved shirt, a black ski mask, black gloves, and black pants, and he was carrying a black semi-automatic handgun.

---

[1] Ind. Code § 35-42-5-1(a).

[2] *Id.*; Ind. Code § 35-41-5-1(a).

Hill shoved Gabriella toward the office in the back of the restaurant, put the gun to her head, and demanded money from the safe. Gabriella said, "Lawrence, I don't have my keys." Tr. Vol. I p. 110. With the gun still to Gabriella's head, Hill responded, "that's not me, I'm not Lawrence." *Id.* at 111. He pulled the trigger, but the gun did not fire.

[4] Alisha Duke, another McDonald's employee who had worked with Hill, also recognized Hill and confronted him during the exchange in the office. She told him, "Lawrence, this is not funny, it's not cute, you need to leave." *Id.* at 185. Hill then grabbed Duke by the throat, put the gun to her head, and said, "you don't know who I am, my name is not Lawrence." *Id.* He pulled the trigger, but again, the gun did not fire.

[5] Meanwhile, Gabriella escaped the office and retrieved her cell phone from the front counter. Hill approached her and took her phone. Hill then grabbed Gabriella by the back of her neck, shoved her toward a cash register, and demanded that she get the money from it. Gabriella said, "Lawrence, there's no money in this drawer." *Id.* at 113. When Hill demanded money from the next cash register, Gabriella told him, "Lawrence, I'm not giving you any money." *Id.* at 114. Myles Chandler, another McDonald's employee, entered the restaurant and saw Hill pointing a gun at Gabriella. As Myles approached the counter, Hill released Gabriella and exited through the lobby's side door.

[6] Hill was arrested shortly thereafter. While sitting in the back of the police car, he asked the police officer why he was being detained. The officer told Hill that

he had been identified as the person who robbed the McDonald's. Hill responded that he did not do it and asked, "how could they identify him if the subject was wearing a mask?" *Id.* at 240. The officer replied that he "never said anything about a mask." *Id.* Hill then said that he would "have to be pretty stupid to rob somebody I know without a mask." *Id.*

[7] On August 29, 2016, the State charged Hill with Level 3 felony robbery and Level 3 felony attempted robbery. A jury trial took place on May 31 and June 1, 2017. During the trial, Gabriella identified Hill as the robber; she testified that she recognized Hill by his height, build, eyes, and voice, and therefore addressed Hill by name several times throughout the robbery. Duke also identified Hill as the robber; she testified that she recognized him by his voice and therefore also called him by name during the robbery.

[8] McKenna Meyer, another McDonald's employee, testified that she saw the masked robber walk inside and hold a gun to Gabriella's head. Meyer also knew Hill from when he was employed at McDonald's, and she concluded that Hill was the robber based upon the height, physical build, and "familiar" eyes of the robber. *Id.* at 51. Myles also knew Hill from Hill's employment at McDonald's and from times when Hill had visited the restaurant. Myles testified that the robber was tall and skinny, that Hill's build was "almost identical" to the robber's, and that Hill's height "perfectly" matched the robber's. *Id.* at 79. Alisha Weemes, the general manager of the Burger King where Hill worked, also testified. Although Weemes did not witness the crime, she reviewed the surveillance footage of it. She testified that through working

with Hill, she became familiar with his style of walking, his build, and his mannerisms. She further testified that she believed Hill was the robber.

[9] The jury found Hill guilty as charged. On June 30, 2017, the trial court imposed concurrent sentences of ten years, with seven years executed and three years suspended to probation, for each offense. Hill now appeals.

## Discussion and Decision

[10] Hill's sole argument on appeal is that there is insufficient evidence supporting his convictions for robbery and attempted robbery. Specifically, he argues that the evidence does not show that he was the person who committed the robberies. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[11] Identification testimony need not necessarily be unequivocal to sustain a conviction. *Heeter v. State*, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996). Identification may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990). As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification

evidence is sufficient to sustain a conviction. *Id.* Rather, we examine the evidence and the reasonable inferences therefrom that support the conviction. *Id.*

[12] To convict Hill of Level 3 felony robbery, the State was required to prove beyond a reasonable doubt that Hill knowingly took property from another person by using or threatening the use of force on any person or by putting any person in fear, and that he committed the offense while armed with a deadly weapon. I.C. § 35-42-5-1(a). To convict Hill of Level 3 felony attempted robbery, the State was required to prove beyond a reasonable doubt that Hill knowingly engaged in conduct that constituted a substantial step toward commission of a robbery. *Id.*; I.C. § 35-41-5-1(a).

[13] The crux of Hill's insufficiency argument is that each witness who identified him as the robber had previously provided statements to the police that contradicted their testimony at trial and that, although the witnesses testified that the robbery happened shortly before the restaurant closed at 11 p.m., the video surveillance footage showed the robbery occurred at approximately 10:30 p.m. It is the factfinder's role to assess the credibility of the witnesses and weigh the evidence. Here, the State presented witnesses who identified Hill as the robber. During the trial, Hill cross-examined each of the witnesses about their identifications and raised the issue of the timestamp on the surveillance footage. His argument on appeal is an invitation for us to assess the credibility of the witnesses and to reweigh the evidence—an invitation we decline.

[14]    Moreover, the State offered two eyewitnesses—Gabriella and Duke—who unequivocally identified Hill as the robber. They both knew Hill from when he worked at the McDonald's and from his subsequent visits to the McDonald's to socialize after he started working at the Burger King across the street. Gabriella testified that she recognized Hill by his height, build, eyes, and voice. Duke testified that she recognized Hill by his voice. The other witnesses identified Hill as well. Meyer testified that she concluded that the robber was Hill based upon the height, physical build, and "familiar" eyes of the robber. Tr. Vol. I p. 51. Myles testified that Hill's build—tall and skinny—matched that of the robber. And Weemes testified that, after reviewing the video surveillance footage, she believed Hill was the robber based on the build, gait, and mannerisms that the robber shared with Hill. This identification evidence is sufficient to support Hill's convictions.

[15]    The judgment of the trial court is affirmed.


Kirsch, J., and Bradford, J., concur.